UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CRAIG GARLAND II,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. ED CV 09-01185-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

    Plaintiff raises the following issues:

    1.   Whether the Administrative Law Judge ("ALJ") properly

```
                considered the school psychologist's findings;
        2.      Whether the ALJ properly determined that Plaintiff did not
                meet or medically equal Listing 12.05C;
        3.      Whether the ALJ properly considered the Plaintiff's
                testimony and made proper credibility findings;
        4.      Whether the ALJ properly considered the lay witness's
                testimony; and
        5.      Whether the ALJ correctly determined that Plaintiff is
                capable of performing the jobs of cleaner, hand packer, and
                linen room attendant.
```
(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY DETERMINED THAT PLAINTIFF**

**DID NOT MEET OR MEDICALLY EQUAL LISTING 12.05C**

In Plaintiff's second issue, he asserts that the ALJ erred by not finding that he meets or medically equals Listing 12.05C. Related to that, and to be discussed concurrently, is Plaintiff's first issue, in which he asserts the ALJ did not properly consider the findings of his school psychologist.

Included in the record is a "Psycho-Educational Study" prepared by the Apple Valley Unified School District on April 13, 1999, signed by Susan Zapasnik, M.A., District Psychologist. As part of the results of that test, Plaintiff was found to have a Full Scale IQ of

68 (AR 118), a Verbal IQ of 74, and a Performance IQ of 67. (AR 118.) The ALJ's decision does not specifically address these findings. The Commissioner asserts that the ALJ could not have considered this information because it was submitted to the Appeals Council after the decision was issued. (JS at 4.) The Appeals Council did consider the information but found that it was rendered six years before the alleged onset date and "does not provide a basis for changing the Administrative Law Judge's decision." (AR 2.) The Court cannot conclude that the Appeals Council found the evidence to be irrelevant; rather, the finding was that the evidence did not suffice to change the ALJ's decision. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

In any event, Plaintiff did receive a consultative psychological evaluation ("CE") on September 19, 2007 from Dr. Kim Goldman, at the request of the Department of Social Services. (AR 218-227.) At that time, Dr. Goldman arrived at the conclusion that Plaintiff's Verbal IQ was 69, Performance IQ 73, and Full Scale IQ 68. These results are substantially consistent with Plaintiff's school testing.

All of this information was relevant to the question of whether Plaintiff met or equaled any of the Listings in the Listing of Impairments pertaining to mental disorders. (See 20 C.F.R. §404, subpart P, Appendix 1, sections 12.00, et seq.)

With regard to the validity of the IQ scores, the ALJ found that Plaintiff's Full Scale IQ of 68 cannot be considered valid based on a lack of cooperation during the testing process noted by the consultative examiner. ("The claimant did not appear to make an adequate effort on the tasks presented to him and results are not considered valid." [AR 225.]) But this does not explain the complete

consistency between the Full Scale IQ score during testing in 1999 by school psychologists, and then eight years later by the consultative examiner.  Moreover, it seems to the Court that the ALJ made an overly broad conclusion that the IQ testing scores were invalid due to lack of cooperation, since this reads too much into Dr. Goldman's statement about Plaintiff's lack of adequate effort.  The Court notes that substantial additional testing was done over and above IQ testing.

The issue actually presented is whether Plaintiff met or equaled Listing 12.05C.  As with all of the Listings under the category of Mental Disorders, they consist of paragraph A criteria, defined as a set of medical findings, and paragraph B criteria, consisting of a set of impairment-related functional limitations. (See Listing 12.00A, "Introduction.")  In Listing 12.05C, there is a requirement that the claimant have a valid Verbal, Performance or Full Scale IQ of 60 through 70, and in addition, manifest "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  It is the claimant's burden to satisfy each element of a Listing.  See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  In this case, the Court does not agree with the correctness of the ALJ's conclusion that the IQ scores reported by the CE are invalid due to lack of effort.  Indeed, they are largely consistent with school testing done on Plaintiff eight years earlier, and in the case of the Full Scale IQ, the results are identical.  This error, however, does not require remand, because the ALJ did correctly analyze whether the B criteria, consisting of functional limitations, existed.  In this regard, the ALJ cited Dr. Goldman's consultative examination which imposed no more than mild functional limitations. (AR 12, 226-227.)  The ALJ also cited and relied upon a December 11,

4

2005 complete psychiatric evaluation, performed by Dr. Yang (AR 198-201), in which, again, the evaluator found no functional limitations which would meet the requirement of Listing 12.05C as imposing "an additional and significant work-related limitation of function." Indeed, other than citing a finding that Plaintiff has a severe impairment of personality disorder NOS (AR 10, JS at 8), Plaintiff provides nothing to the Court which would indicate any functional impairments that would meet the criteria set forth in the applicable Listing. Plaintiff has failed in his burden to demonstrate that he meets or equals a Listing, and the Court thus finds no error with regard to the first two issues.

**II**

**THE ALJ DID NOT ERR IN HIS CREDIBILITY ASSESSMENT**

In Plaintiff's third issue, he asserts that the ALJ failed to make proper credibility findings. The ALJ found that Plaintiff was not a credible witness, and that although his medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity ("RFC") assessment. (AR 12.)

In making the above determination, the ALJ relied upon accepted criteria for credibility determination. See Fair v. Bowen, 885 F.2d 597, 603, 604 n.5 (9th Cir. 1989); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). A brief review of the ALJ's evaluation does indicate that the ALJ did consider Plaintiff's specific assertions in light of the evidence in the record. For example, Plaintiff complained of

1  multiple joint pain and testified he was unable to walk for more than
2  15 minutes. (AR 12, 23, 31, 218.)  Despite this, there was no
3  objective evidence of any such impairment in the record. (AR 10, 194-
4  197, 218-222, 228-230.)  Similarly, Plaintiff's complaints to the
5  consultative physician regarding seizure-like symptoms were
6  inconsistent.  The record s devoid of any evidence that Plaintiff has
7  ever been evaluated or received treatment for such a condition.
8  Indeed, as the ALJ noted, the consultative examiner indicated that
9  Plaintiff's symptoms were not consistent with those expected from
10 seizures. (AR 12, 194, 197.)  Plaintiff complained he had small feet
11 and experienced foot pain, but upon examination, there were no
12 abnormalities found. (AR 12, 220.)  Further, despite Plaintiff's
13 complaints of very extreme pain, which, at the hearing, he claimed was
14 so intense that it rated 10 on a scale of 1 to 10 (AR 32-33), the ALJ
15 noted that he had never been treated with anything more than over-the-
16 counter Tylenol. (AR 12, 31, 197, 199, 202, 205.)  The ALJ was
17 entitled to consider this conservative and minimal treatment in
18 evaluating Plaintiff's credibility as to pain complaints. See Johnson
19 v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).

20      Added to the above were inconsistent statements Plaintiff made
21 about the nature and frequency of his pain. (AR 12, 32.)  The Court
22 need not evaluate whether or not the ALJ correctly concluded that
23 Plaintiff was guilty of malingering, as a credibility assessment
24 factor, because the remaining reasons cited in the decision are more
25 than adequate and independent of any finding of malingering to
26 substantiate the ALJ's finding.
27      For the foregoing reasons, Plaintiff's third issue has no merit.
28

# III

# **THE ALJ'S FAILURE TO SPECIFICALLY ADDRESS LAY WITNESS TESTIMONY WAS HARMLESS ERROR**

In Plaintiff's fourth issue, he asserts that his cousin, Venus Mills, testified at the hearing (JS at 16, AR 35-40) regarding functional limitations related to Plaintiff's mental status. The ALJ failed to discuss this lay witness testimony, and as the Commissioner concedes, this was error. See JS at 17, citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The issue is whether this error merits remand. The ALJ's failure to discuss this lay witness testimony is subject to harmless error analysis pursuant to the holding of Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006). This Court cannot find harmless error under Stout "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." That is the case here.

Plaintiff failed to present any objective evidence to support his contention that his impairments were disabling. Moreover, Plaintiff's mental RFC as found by the ALJ was not inconsistent with the testimony of Ms. Mills. She testified that Plaintiff was afraid of people, did not always understand what was said to him, must repeatedly be told what to do, and does not stay on task. (AR 36, 39-40.) The ALJ, in effect, incorporated these limitations in finding that Plaintiff was limited to performing habituated tasks with no public contact. (AR 11.)

There is no dispute that Plaintiff has borderline intellectual functioning. (AR 10.) The issue, again, is whether there are functional limitations as a result of Plaintiff's intellectual functioning which support a finding of disability. As this Court has

indicated, the ALJ correctly found that the objective evidence, including two consultative mental status examinations performed two years apart, supported a minimal amount of functional limitations.

For the foregoing reasons, there is no error with regard to Issue Four.

**IV**

**THE ALJ DID NOT ERR IN FINDING THAT PLAINTIFF COULD PERFORM THE JOBS OF CLEANER, HAND PACKER, AND LINEN ROOM ATTENDANT**

Plaintiff's final issue concerns his assertion that the ALJ erred in finding that he has the mental RFC to perform the jobs of cleaner (DOT 381.687-018), hand packer (DOT 920.587-018), and linen room attendant (DOT 222.387-030). (AR 13, 44.) The ALJ concluded that Plaintiff does not have the RFC to perform "detailed and complex work." (AR 11.)

Plaintiff's argument is flawed because the jobs cited do not require detailed and complex work.

The hypothetical question posed by the ALJ to the vocational expert ("VE") included limitations to no detailed or complex work, and that the individual would need to be in a habituated and non-public work setting. (AR 44.) In response, the VE did identify the three jobs which Plaintiff contends are beyond his mental RFC. The VE described these jobs as unskilled and requiring a Specific Vocational Preparedness ("SVP") level of 2. (AR 43-44.) Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." (20 C.F.R. §416.968.) The SVP category refers to the amount of time it takes an individual to learn a job. An SVP level 2 does not require anything

beyond a short demonstration up to and including one month to learn. Unskilled work is reasonably correspondent to SVP level 2 jobs found in the Dictionary of Occupational Titles ("DOT").

Plaintiff attempts to find equivalence in jobs which are described as "detailed but uninvolved" and the prohibited jobs that are "detailed and complex." Uninvolved work imports a not high level of reasoning. The Court finds nothing inconsistent between a job requiring a Reasoning Level 2 and a limitation to routine and repetitive tasks. (See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).)

One of the jobs identified by the VE, that of linen attendant, is described in the DOT as requiring a Reasoning Level of 3. The VE's testimony, however, regarding the number of local jobs available, provided sufficient and persuasive evidence to overcome any possible deviation. (AR 44.) The DOT only raises a rebuttable presumption as to job classifications, which can be rebutted by a VE's expert testimony. See Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). In any event, the other jobs identified by the VE are consistent with unskilled work and a Reasoning Level of 2, which is within Plaintiff's functional abilities.

For the foregoing reasons, the Court finds no error with regard to Plaintiff's fifth issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: February 8, 2010      /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE